We will proceed promptly to the first case on calendar, which is Gardner v. Lefkowitz. Lefkowitz, and I see counsel here. Good morning. Good morning. May it please the court, my name is Jeffrey Burke. I appear on this appeal for the defendant appellant. This matter was remanded to the district court by this court to consider three things. Initially, were the service of process was proper, which is obviously a threshold issue, and then if so, was the motion to vacate the defendant's default made timely, and if that was so, was the defendant's default willful, and did the defendant show a meritorious defense, and what prejudice, if any, is there to the non-defaulting party, which is, of course, the case law that this court cited under McNulty. Addressing the threshold issue about service of process, the burden of proof of service of process rests with the plaintiff in this case, as it does with all cases. The plaintiff's affidavit of service is prima facie evidence of the service, but it is not gospel that is subject to attack. Here, service was made with the least desirable method of all under state law, which is CPLR 308 subdivision 4. Of course, the plaintiff must make diligent efforts, and that phrase is strictly construed as has held by the Court of Appeals in the state of New York and repeatedly by this court as well. There must be strict compliance with the statute because the service is the least likely to provide actual notice. This particular issue was not raised in the district court. Yes, you're correct. And the reason I was not counsel at the time and the reason I believe it's probably before this court is because it is solely a matter of law and it relates to the court's jurisdiction. If the court lacks the jurisdiction, of course, it shouldn't act any further and the matter should be dismissed. So it really is a threshold issue. The issue of the validity of process was raised, but you're correct, Your Honor. This particular aspect of the service was not. But I believe the court should consider it for the reasons I've just stated. The process service affidavit of service appears in the appendix at page 13. It alleges two prior attempts at service before the posting, and there's a space for the third date and it remains blank. Where is that in the document? That's on page 813. I have 813 in front of me. Where in the document? Do you read after it says electronic filing instructions at the center of the page in capitals? Yes. Okay. You go down further and it says that the defendant made prior diligent efforts to effect personal service upon said defendant at the above address to wit, and it lists two dates. And you see the way the dates are written, it's with the month, with the slash, the year. I mean, the day with the slash and then the year and then the next two slashes that you're talking about. Yes, yes. Unfilled in. So you'll see the first date is June 17, 2005 at 1020 a.m. The second date is July 5, 2005 at 7 o'clock a.m. And then the third, you'll see two slashes that are empty, never filled in. Excuse me. Excuse me. Wasn't the third attempt on the date of the nail-in-mail? Well, that's what you would assume and that's what I assumed also. But that's an assumption that's not stated in the affidavit. If you go down further in the affidavit, Judge Pooler, you'll see that on the third date it says on July 6, he served a true copy by affixing the same to the door of the defendant at said residence since admittance couldn't be obtained upon reasonable application. But it doesn't say when. The only dates that he shows he made reasonable application to gain admittance was on the first two dates. Now, you and I would both assume, I believe everyone would assume, that a process server wouldn't go to the door and just post a notice and leave. But it doesn't say that. You have to go by what it says. And even without that particular argument, there are other reasons why service is defective. If for any reason we had to remand this, and on remand it was established that on that third, on the nail-in-mail date, there was also an attempt at personal, is that the end of your jurisdictional argument? No, Your Honor. Judge Newman, because there are other reasons, there are at least four other reasons why service was defective in this case. For example, service should be attempted on nine consecutive dates. Here service was made on July 5th and on July 6th. Does it have to be? No. No. The courts have all said, including this court, that it's a case-by-case determination. So that wouldn't defeat jurisdiction? No, no. It's the totality of the circumstances. It might if there are other things together with it. Standing alone, I don't think it would. Any more than many things standing alone would. For example, you have to make multiple attempts. There were cases where a process server made six attempts, but there were other defects. So you have to look at the whole case. You have to look at all the efforts that the process server made. Here, there were other cases that say an attempt should be made at least once on a weekend. There was no service on a weekend. There were cases that I cited, and my adversary hasn't even responded to those cases or shown any of them are correct, that you should not make service immediately following a holiday. Service was allegedly made on July 5th, the day after the 4th of July in the summertime. Isn't it true that in the lower court you argued that she didn't even live at this address? Yes. I didn't argue that, but my predecessor did, and I'm abandoning that. I'm not alleging that. I'm not saying what she said is not true. I'm just saying she did not establish that. I believe that the process server made diligent attempts to determine the address. So whether she actually resided there or not I don't believe is determinative because she could have multiple residences, and I'm not claiming in this appeal that service is defective because of the wrong address. Counsel, in the time remaining, can you turn to her meritorious defense? Can you tell me what it is? Yes. I just want to make one other point very briefly. Service also has to be made during non-working hours, and counsel claimed that that's a specious argument in this case because she claimed to be a housewife. But this court held, and I think Judge Newman was on the panel together with Judge McLaughlin, that that is not the issue. The issue is whether the process server made diligent attempts. It's not even in that case, which was cited by my adversary on page 21 of his brief, there was actual notice and there were attempts to evade service, and that was held to be irrelevant. It's really the process server's diligent attempts. But to address your point, Your Honor, first of all, the motion was timely made as the lower court and the magistrate both held on two separate occasions because where you allege non-receipt of process, the motion can be timely made at almost any time. Secondly, there was no establishment of willfulness because without knowledge of the process, there can't be any willfulness. Willfulness requires an awareness. And lastly, to get to your point, which is what is her defense, her defense is that she had no contractual relationship with this man. She denied it. She paid in part, didn't she? No, the claim is that she paid in part. She denied it. They acknowledged receipt of funds from a third-party law firm who said that they didn't represent her, and she claimed that they were not her agents. She denied paying. They claimed that she paid. Can you tell us that law firm's role in this case? I really don't know. Really? I honestly don't know. I know the underlying facts are very colorful, but really not related to here, that her brother was incarcerated for 845 years for horrible acts, but that has nothing to do with the validity of service. There's no doubt money went from the firm to the British solicitor. I have no knowledge, but they've established that, I believe, with documentary evidence, and she hasn't refuted that. But we don't know in this record why that firm sent it? That's correct. My predecessor made all kinds of allegations and all kinds of claims which I don't subscribe to, that there was collusion, that there was all kinds of fraud. I have no idea, and I don't think he could make those claims. Well, what did your client say? I didn't ask. Really? Because I honestly don't think no, I honestly didn't, because how could I raise it on the appeal? Had she told me whatever she told me? I would have just thought you'd have been curious. Oh, I am curious, but I thought that since I couldn't raise it on the appeal, what's the point? I can't use it. Wouldn't be the first time we learn something during an appeal. Well, I try not to violate the rule. You have reserved a couple minutes' rebuttal. Okay. I'll hear you then, unless there's a question from Judge Pooler. No, thank you. Okay, go ahead. Good morning, Your Honor. Good morning. My name is James Sinker. I represent the appellee, Pierce Gardner. To answer your question, Judge Newman, Mr. Gardner submitted an affidavit saying that he met Ms. Lefkowitz in Vienna, and she told him at that meeting that she would have the law firm of Tepper & Tepper wire him the money. That's disputed, isn't it? She never denied it. She doesn't say anything about it. She just says — But she denied it. No, it's a very tricky affidavit. It's an affidavit saying they weren't my lawyers. That's all she says. And the law firm submits an affidavit saying we didn't represent her, but the law firm doesn't say we never wired money or we were never told to wire money. So Gardner says at the meeting in Vienna he was told by Lefkowitz he would be getting money from Tepper & Tepper, and he did get money. Why do you say the firm sent the money? They were acting as her agent. For whatever reason, she wanted them to wire the funds. And what were the circumstances that made them her agent? That they wired the funds on her behalf. How do we know that? Gardner says he received funds from Tepper & Tepper. Yeah, but how do we know the firm acted as her agent? Well, Your Honor, when someone submits funds, I would propose that they are someone's agent. If I wire you money on behalf of someone, I'm that person's agent. So I would submit that they were her agent. That's based on several assumptions that are not before us. There's no evidentiary trail on this. Your Honor, there's Gardner's affidavit, and then there's his fee note that shows that he did get money. He confirms it when he sent her the statement that he got money wired to his account to give her credit. And what was the retention? The retention was to help Lefkowitz's brother avoid extradition to the United States. And how much of the fee was charged after the extradition was completed? I would have to check, Your Honor. I would say a lot, wasn't it? Two-thirds, probably. And so what's the basis for that? He was appealing it to the United Nations. I don't know the exact body, but there was an appeal for several months. He appealed it to the U.S. Is that the sort of thing one normally does and charges for? Your Honor, I'm not an extradition expert from Europe, but he says that he is an expert. Gardner is. He says it. He says he's done many of them, and that's what the procedure was. And Lefkowitz told him, don't leave any. Did she authorize that appeal to the U.N.? Yes. She authorized the appeal? Yes. After the extradition? Yes. Where is that in the record? Your Honor, in Gardner's affidavit, he said he was in constant communication with her. His fee notes show numerous telephone conversations with her. I understand communication, but where is it says that she authorized an appeal to the U.N. of all places? He said he was told not to leave any stone unturned. And this was a stone? Correct. I see. This was a path in the process. Your Honor, I'd like to get to the merits of the appeal, if I may. This is a tortured case. It's probably about 10 years old. All along, through hundreds of pages of submissions, 50 different documents, we kept being told that Lefkowitz did not live at that address. So we submitted proof showing that the process server verified the address with the post office. He's saying he didn't press that on appeal. Well, okay. So now we have a totally different theory raised for the first time. He has had ample opportunity to do it, and I think this Court's decision in Patterson against Balsamico, which I cite in my brief, is dispositive. In that case, there was a remand, and there was an appeal with a remand, and then after the remand, the defendant wanted to raise statute of limitations as a defense. It had been asserted in his answer, but never raised on the appeal or after the remand. But it was in his answer. Here, obviously, there was no answer. There was a proposed answer, which curiously didn't even include a defense of improper service. And this Court said in that case, we conclude that this defense was forfeited by Balsamico's failure to pursue it during the earlier appeal or after remand. Is jurisdiction handled the same way? I believe it should be. It's a defense. Why would we hold a . . . First of all, was she represented at the time? When she first made the motion to vacate, she did a pro se. Then after the objections, by the time the objections came, that's when she got an attorney who submitted hundreds of pages of objections to the magistrate, and then she was represented by attorneys from then on. So Judge Batts had considered all of her attorneys' arguments several times. Well, Judge Batts certainly considered personal jurisdiction, didn't she? Yes. So what you're saying was not presented was a ground of personal jurisdiction, not the argument of personal jurisdiction. Correct. She didn't raise the diligent effort . . . Right. . . . as distinguished from the three personal services. Correct. Have we ever applied waiver quite that precisely? Well, Your Honor, I think that the case is . . . I haven't found a case where it was specifically on point, but this one I think is the closest I could find. If we thought the issue was before us, what do you have to say about the service issue? Your Honor, the service, there was clearly three attempts. The process server on page 13 clearly says that he went there on that day that's in question. If I may just read from his affidavit. He said, on the 6th day of July, 2005 . . . Are you reading from A13? A13, yes. The very first paragraph right after his name. On the 6th day of July, 655, Deponent attempted to make personal service of a true copy of the Summons and Complaint. Then he says, Deponent made prior diligent efforts on two other days. So, when he says he attempted service, then clearly he was there. He attempted service. And he goes on to say, Deponent spoke to David Spira. The prior refers to 617 and 75, doesn't it? I'm focusing on the words prior. So, obviously . . . He says the prior, to wit. He tells us what the prior means. Correct. It means those two. Correct. Where's the third one? On the 6th day of July, Deponent attempted to make personal service. And then he says, previously, prior, I made two additional attempts. And then he spoke to David Spira that day. Where's the prior? Where are you reading that from? Your Honor, it says on the 6th day of July, Deponent attempted to make personal service of a copy of the Summons and Complaint. So, I submit he's saying that on July 6th, he tried to serve her at that address. Right. That's number one. 75 is number two. What's the date of number three? 617. The one in the middle. No, 67 . . . In the middle. That's the first. The first, to wit, 617. Right. The second was July 5th. Right. Where's the . . . And the third was July 6th, what I just read. When he says he attempted . . . No, on July 6th, he says, I've attempted service by affixing the same to the door. No, I don't read it that way. Well, it continues that way. And, therefore, on the 6th of July, at 655, at that address, served a copy by affixing the same to the door. Your Honor, if you read it, it says, on July 6th, he attempted to make personal services. He said he spoke to David Spira, a neighbor, who stated that Teponin lived there, but had no knowledge of her. And then, after he had that conversation with Spira, he affixed it to the door. Right. So, where was the third effort at personal service? July 6th, Your Honor. He said, I attempted to make personal service. Well, he says, by affixing it to the door, doesn't he? No, I don't read it that way. Well, that's what . . . I'm interested in how you read it. It's what it says. I served a copy by affixing the same to the door. Just those are the words. He attempted to make personal service by . . . and then he spoke to the neighbor. So, I read that to mean I attempted to serve it. If he meant I nailed and mailed and tried to serve, why wouldn't he have put those dates in the third blank? I don't think it's necessary, because he said he did attempt it on the 6th. Okay. Because he said he made prior diligent efforts on those other two days. So, clearly, he had made a diligent effort on the third day, because it says, I made prior diligent efforts. Well, the prior, he says, to wit. He illustrates the prior by those two days. That's what to wit means, doesn't it? Right. I would focus on the prior. All right. Meaning that this is the third . . . And he would focus on the to wit followed by the two days. Okay. And, Your Honor, I submit that there's no defense here. Counsel, why isn't the defendant's affidavit that she never entered into a contract with the plaintiff, why isn't that a meritorious defense that at least should get her before a jury? Your Honor, because it overlooks the second cause of action, which was for an account stated. And the account was, the fee notes, as he calls them, were sent to the address that he was given, or faxed to the number that he was given. She doesn't deny. She just says, oh, I may have gotten them. I don't recall. And if I got them, I would have thrown them in the garbage. So I think that we've established we have a fax confirmation sheet. If there was no contract for services, doesn't that dispose of the account stated as well? No, Your Honor. I think you can have an account stated even without an agreement. On quantum merowit, you don't need to have a written agreement. Well, if we go quantum merowit, there would be a big question whether he earned 73,000 pounds. Wouldn't there be? Yes. I'm just saying that the fact that fee notes were sent to the address fax number, the fax confirmation sheet was not included in the appendix, but it is in the docket, and I can submit a copy should the court like. Now, he was in England, right, your client? Correct. And the service was rendered somewhere in Europe? Correct. Whose law applies? That's a question that we don't have to get to because of the default, but I don't think New York law necessarily applies. I mean, he was a British lawyer providing services, I think, in Austria. Do we know whether any of those jurisdictions require a written retention agreement? No, Your Honor. It was never raised before. Did the British customarily use a retention agreement? I'm told not, but he didn't have one here, and I'm told that that's not the procedure in Britain. So, Your Honor, after all these ten years, I think it's time to put an end to the case. You shouldn't allow this total shift of procedure after hundreds of pages and then now focus on something that perhaps Judge Batts could have dealt with at the time rather easily had the situation arose. Thank you. Thank you, Your Honor. We'll hear rebuttal. Thank you. Firstly, Judge Poole, you're absolutely correct. There cannot be an account stated if there's no underlying agreement. That was the reason why when you get magazines. We have an affidavit from the lawyer who said that she retained him, I believe, in person. Yes, that's what he says, but she denies it. She admits meeting with him. And she also admits that money went to him, correct? Look, the money didn't come to him like manna from heaven. No, of course not. It came from whom? I don't know. We don't know. No, I don't know. And, of course, my predecessor has all the kinds of conspiracy theories. Did she deny that that was her money or that she directed that it be paid? I don't believe she ever said it was her money. No, she didn't. No, she didn't. I don't believe she ever said that she did it. And the money went. That's enough to establish a contract. Which are you denying, that she said it was hers or that she denied it? No, I don't think she ever said that she authorized anyone to send any of her money. Did she deny it? I don't believe she addressed that. Either way. Right. So she didn't deny that this money was sent at her direction? I don't believe she did. She denied that she retained the law firm? Yes. Well, that's neither here nor there, is it? Because an attorney can send money. You don't even have to be a lawyer in order to send money to somebody at their request. But she denied she retained the plaintiff. She denied any contractual. We're going round and round. She denied she retained the plaintiff. The plaintiff says he was retained. He was paid in part. She does not deny that the money that was paid to him was paid at her direction.  Correct? Correct, Your Honor. I just, we only have 16 seconds. That's not enough for a contract. I mean, maybe you're saying that there's a basis for avoiding a contract. I don't know. But, I mean, partial payment is— If it comes from her. I understand. I just don't want to—I only have two seconds left. So I want to say a couple of things. First of all, there's a world of difference between a defense of statute of limitations and a defense of lack of jurisdiction. The latter goes to the power of the court to make an adjudication. The case relied upon by my adversary dealing with statute of limitations should have no applicability to jurisdictional arguments because that goes to the power of the court. If there was no jurisdiction ab initio, the whole proceeding is void and the thing should be vacated. And I think that's it. I'm out of time, pretty much. Thank you. Thank you very much. We will reserve decision. Thank you.